Filed 12/23/24  P. v. Johnson CA3

NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yuba)

----

| | |
|---|---|
| THE PEOPLE, | C097570 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF2200305) |
| v. | |
| JERRY ALLEN JOHNSON, | |
| Defendant and Appellant. | |

A jury convicted defendant Jerry Allen Johnson of first degree residential burglary (Pen. Code, § 459—count 1)[1] and possession of burglary tools (§ 466—count 3).[2] Defendant admitted he had two or more prior strike convictions and admitted an

---

[1]  Undesignated statutory references are to the Penal Code.

[2]  The jury found defendant not guilty of unlawful possession of ammunition.  (§ 30305, subd. (a)(1)—count 2.)

1

enhancement for being released from custody on bail or on his own recognizance at the time of the offenses (§ 12022.1).

On appeal, defendant argues the trial court erred by: (1) admitting statements he made to law enforcement regarding a white truck, (2) reading the section 12022.1 enhancement allegation to prospective jurors, and (3) admitting evidence regarding his prior burglary convictions. Defendant also contends the cumulative effect of his alleged errors necessitates reversal. We will affirm the judgment.

## I. BACKGROUND

A. lives next door to his aunt and uncle's property in Wheatland. The property has a perimeter fence as well as inner fencing around the housing areas. The front gate is electronic, and the other gates are secured using padlocks and chains. Prior to February 14, 2022, all the gates were secured, and the fences and windows were intact. At around 7:30 p.m. that evening, A. was outside with his cousin, J., when they heard a loud breaking of glass. His aunt and uncle were away on vacation. Only their family members had permission to enter the property while they were away.

A. and his cousin went toward where they thought they heard the sound. They heard the sound again and could tell more clearly where it was coming from. A. was behind his cousin. He saw defendant with cast-iron object in his hands in front of a broken window. J. saw defendant standing on an air conditioning unit and breaking the glass with the object. J. told defendant to stop. J. claimed he had a gun. Defendant put his hands up and then took off without the object; the cousins followed. They caught defendant and J. shoved him to the ground. J. also punched defendant in the face. The cousins held defendant down until the police arrived. Defendant apologized for entering the house and trespassing and told the cousins to let him go. At some point, defendant said a friend was there with him.

Law enforcement found an 18-inch-long hatchet that weighed between five and seven pounds by the broken window. The backpack defendant was wearing contained

bolt cutters and a large screwdriver.  A truck registered to a different Johnson was parked on the levee.  A shotgun shell was found in an inventory search of the vehicle.

In addition to the broken window, the fencing was cut in more than one place and a lock and chain were missing from a gate.

## II.  DISCUSISON

### A.  Defendant's Statements About the Truck

#### 1.  Trial Court Proceedings

Prior to trial, the prosecution moved in limine to exclude evidence of Deputy Abe's actions toward defendant during his arrest.  The motion indicated Deputy Abe had been charged with assault by a peace officer and would not be called as a witness at trial. Defense counsel objected to the motion, stating he would like to have Deputy Abe testify because "[i]t paints a full picture of the events of that day and what happened and why [defendant] said certain things."  The court decided to hold an Evidence Code section 402, subdivision (b) hearing on whether Deputy Abe would invoke his Fifth Amendment rights or testify.  In the course of discussing this, the court also stated it would hold an Evidence Code section 402, subdivision (b) hearing on the subsequent statements made by defendant.[3]

At the hearing on the statements, the prosecution clarified it was only seeking to introduce defendant's "second statement" that "[h]e came in the white truck that was on the levee, that he drove it there."

Deputy Paredes testified that he responded to a report of a fight possibly involving a gun in a rural area.  When he arrived at the location with Deputy Abe, A. and J. were on top of defendant and holding him down.  Deputy Paredes arrested defendant and placed him in handcuffs.  While Deputy Paredes was handcuffing defendant, defendant made

---

[3]  It appears the court raised the admissibility of defendant's statements sua sponte.

3

noises that sounded as though he had been previously injured. Deputy Paredes said, "it took [defendant] about anywhere from 15 to 20 seconds of me constantly asking him to get up, and he wouldn't get up at that time." Deputy Abe said, " 'Get up or I will boot you in the ribs.' " Deputy Abe kicked defendant once with the bottom side of his foot. Defendant got up in another second or two.

Deputy Paredes walked defendant to the fence, which was 25 to 30 yards away. Deputy Paredes did a pat down for weapons. Deputy Abe asked defendant, without *Mirandizing*[4] him, if another individual was involved. Defendant said yes and that the other individual had run towards the road.

Another minute or so later, while defendant was still handcuffed and standing at the fence area, A. or J. said someone had observed a white truck on the levee near the property. A. and J. were on the other side of the fence from defendant, about seven to 10 feet away. They were "in the background" speaking to someone on the phone and either mentioned the truck to Deputy Abe or Deputy Abe overheard them. Defendant, according to Deputy Paredes, "[s]pontaneously said, 'It's a white truck and we were in it.' " Deputy Paredes relayed this information to the other deputies over his radio. At this point, defendant added that the truck was white and belonged to his son. No officer posed any questions to defendant before he made any of these statements about the truck.

Body camera video of the arrest and statements were played for the court, and after viewing it, the court said, "I heard 'white truck', and my ruling is there was no questions before him on that." The court observed "there is a clear Fourteenth Amendment violation when he's being kicked. Nothing that is the fruit of that, anything he said right there when he's being kicked, that's not how we interrogate people. Not in this country." The court ruled the statements to Deputy Abe in response to the question

---

[4] *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

4

about whether there was another person were inadmissible. Defense counsel argued "the interrogation doesn't end there" even though "I understand that no further questions were posed." The court found defendant's statements regarding the truck admissible because they were not elicited by the officers: "[T]hat is not fruit of the poisonous tree. He volunteered of his own volition. He's standing right there."

### 2. Voluntariness

Defendant argues the trial court erred in admitting statements he made regarding the truck after he was restrained and kicked and before he was read his *Miranda* rights. We disagree.

"As is well-known, *Miranda* . . . and its progeny apply to exclude certain evidence obtained during custodial interrogation. [Citation.] . . . '[T]he *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.' [Citation.] [¶] Interrogation thus refers to questioning initiated by the police or its functional equivalent, not voluntary conversation." (*People v. Thornton* (2007) 41 Cal.4th 391, 432.)

In the trial court, the People relied on *People v. Lewis* (1990) 50 Cal.3d 262, which held that a "casual conversation" initiated by the defendant in a custodial setting was not an "impermissible interrogation" for these purposes. (*Id*. at pp. 274-275.) Defendant argues *Lewis* is distinguishable because he was talking to avoid being kicked or beaten again, and his statements were not voluntary, but the result of compulsion, because he knew if he did not cooperate, he would likely be kicked or punched again. The only authority he cites to support his position in his opening brief is *Oregon v. Elstad* (1985) 470 U.S. 298, which addressed whether an initial failure to administer *Miranda* warnings taints subsequent admissions made after a suspect has been advised of and waived his

5

*Miranda* rights. (*Id*. at p. 300.) Defendant cites *Elstad* for the proposition that "[t]hough *Miranda* requires that the unwarned admission must be suppressed, the admissibility of any subsequent statement should turn . . . on whether it is knowingly and voluntarily made." (*Id*. at p. 309.) He argues the statements at issue were made as a result of compulsion and were not voluntary.

" 'The court in making a voluntariness determination "examines 'whether a defendant's will was overborne' by the circumstances surrounding the giving of a confession." ' [Citation.] The prosecution bears the burden of proof and must show 'by a preponderance of the evidence the statements were, in fact, voluntary.' " (*People v. Krebs* (2019) 8 Cal.5th 265, 299.)

" ' "A confession may be found involuntary if extracted by threats or violence, obtained by direct or implied promises, or secured by the exertion of improper influence. [Citation.] Although coercive police activity is a necessary predicate to establish an involuntary confession, it 'does not itself compel a finding that a resulting confession is involuntary.' [Citation.] The statement and the inducement must be causally linked. [Citation.]" [Citation].' [Citation.] A confession is not rendered involuntary by coercive police activity that is not the 'motivating cause' of the defendant's confession." (*People v. Linton* (2013) 56 Cal.4th 1146, 1176.)

" 'On appeal, we conduct an independent review of the trial court's legal determination and rely upon the trial court's findings on disputed facts if supported by substantial evidence.' [Citation.] The facts surrounding an admission or confession are undisputed to the extent the interview is tape-recorded, making the issue subject to our independent review." (*People v. Linton, supra*, 56 Cal.4th at pp. 1176-1177.)

The record indicates defendant was kicked once by an officer for not standing up after being asked to do so. The punch defendant relies on was thrown by a private party. A confession can only be deemed involuntary if it is the result of "coercive police activity." (*Colorado v. Connelly* (1986) 479 U.S. 157, 167.) "Absent police conduct

6

causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." (*Id*. at p. 164.) Even "[t]he most outrageous behavior by a private party seeking to secure evidence against a defendant does not make that evidence inadmissible under the Due Process Clause." (*Id*. at p. 166.)

The trial court concluded defendant was not asked any questions when he volunteered information about the truck. This was supported by the record, which indicates that defendant overheard A., J., and the officers talking and spontaneously chimed in. Defendant concedes Deputy Abe's back was to him. There would be no reason for him to believe he would be kicked again if he did not interject himself into this conversation and volunteer information he was not asked to volunteer. Thus, the trial court did not err in concluding the statements about the truck were voluntary.

B.      *Reading of Section 12022.1 Enhancement Allegation*

Defendant argues the trial court erred in reading the section 12022.1 enhancement allegation to prospective jurors. The court read to potential jurors the information, including these allegations: "[I]t is further alleged within the meaning of . . . Section 12022.1, that at the time of the commission of the above offense, the defendant . . . was released from custody on bail or on his own recognizance prior to judgment becoming final for a felony offense in Sutter County." Previously, defendant filed a motion in limine to bifurcate the prior strike and section 12022.1 enhancement allegations. Defense counsel moved for a mistrial on the basis that the trial court read the allegations after granting the motion and the allegation was prejudicial. The prosecutor explained the People had presumed that the court had granted the entire motion. The court said it had granted the motion as to the strikes only and had not ruled with respect to the section 12022.1 allegation. The court then raised the substantive issue of whether the People wanted to try the allegation. The prosecutor stated that it would accept an admission. Defense counsel stated defendant had agreed to admit. The court stated, "You have your

objection on the record. I don't believe it's prejudicial error. We have jury trials where juries hear these things. If he wants to admit it now, then the jury will be advised that there are certain charges that were not submitted to you and you are not to speculate. We'll do a limiting instruction, and I'll accept his admission if that's what he wants to do." Defendant agreed, and the court took his waiver of his right to a jury trial on the allegation and his admission.

The jury was ultimately instructed the allegation had been removed from their consideration: "The further allegation that the defendant was in violation of . . . section 12022.1[, subdivision ](b) no longer needs to be decided in this case. [¶] Do not speculate about or consider in any way why you no longer need to decide this allegation."

Defendant cites no actual ruling to support his understanding or the People's that the motion for bifurcation of the section 12022.1 allegation had been granted at the time the court read the allegation. The minutes state, "As to Defense motion in limine #13, Court grants bifurcation on the issue of the strike priors." Even if we conclude the issue was not forfeited by defendant's failure to obtain a ruling before the trial court read the information, defendant has failed to demonstrate the reading of the allegation prejudiced him. He cites no authority indicating the mere reading of an allegation is prejudicial. Rather, he cites authority explaining that "a trial court has the discretion, in a jury trial, to bifurcate the determination of the truth of an alleged prior conviction from the determination of the defendant's guilt of the charged offense, but is not required to do so if the defendant will not be unduly prejudiced by having the truth of the alleged prior conviction determined in a unitary trial." (*People v. Calderon* (1994) 9 Cal.4th 69, 72.) Defendant has demonstrated no error in the reading of section 12022.1 enhancement allegation.

C. *Admissibility of Evidence Regarding Prior Burglary Convictions*

Defendant raises two arguments challenging the trial court's admission of evidence pertaining to his previous burglary convictions. In the first, defendant

challenges the admissibility of the evidence he committed other burglaries. In the second, defendant challenges the admissibility of statements he made regarding these burglaries.

### 1. Evidence of the Convictions

Defendant contends the trial court erred in admitting evidence of his prior burglary convictions under Evidence Code section 1101, subdivision (b). The court admitted certified records of conviction with respect to 13 instances of first degree residential robbery. The court admitted them to prove intent and absence of mistake. The court explained these convictions were recent, relevant, and defendant had pled to the convictions "which lessens the prejudicial value to the defendant."

Evidence Code section 1101, subdivision (a), " 'expressly prohibits the use of an uncharged offense if the only theory of relevance is that the accused has a propensity (or disposition) to commit the crime charged and that this propensity is circumstantial proof that the accused behaved accordingly on the occasion of the charged offense.' " (*People v. Chhoun* (2021) 11 Cal.5th 1, 25.) " 'Subdivision (b) of section 1101 clarifies, however, that this rule does not prohibit admission of evidence of uncharged misconduct when such evidence is relevant to establish some fact other than the person's character or disposition,' such as identity, common plan, or intent. [Citation.] Evidence of uncharged crimes is admissible to prove identity, common plan, and intent 'only if the charged and uncharged crimes are sufficiently similar to support a rational inference' on these issues." (*People v. Edwards* (2013) 57 Cal.4th 658, 711.) " 'The least degree of similarity (between the uncharged act and the charged offense) is required in order to prove intent.' " (*People v. Foster* (2010) 50 Cal.4th 1301, 1328.) The same is true as to absence of mistake. (*People v. Phillips* (2022) 75 Cal.App.5th 643, 672.) " 'In order to be admissible to prove intent, the uncharged conduct must be sufficiently similar to support the inference that the defendant " 'probably harbor[ed] the same intent in each instance.' " ' " (*Foster, supra*, at p. 1328.)

9

"We review the trial court's determination for abuse of discretion, and view the evidence in the light most favorable to the trial court's ruling." (*People v. Edwards, supra*, 57 Cal.4th at p. 711.)

Defendant contends detail of the similarity between the charged burglary and the prior burglaries is missing. The court examined this issue and concluded that because the prior crimes also involved burglaries of residences, there was sufficient similarity because the intent was the same. "[T]he recurrence of a similar result tends to negate an innocent mental state and tends to establish the presence of the normal criminal intent." (*People v. Jones* (2011) 51 Cal.4th 346, 371.) In contrast, the court excluded under Evidence Code section 352 evidence of defendant's prior convictions for second degree burglary on the basis that entering a store with intent to steal was insufficiently similar to entering a home with the intent to commit a felony or larceny therein. As the trial court explained, the risk of undue prejudice with respect to the convictions for first degree residential burglary was minimal because defendant was convicted of these crimes, and so the jury would not be tempted to convict him simply to punish him for the prior offenses. (*People v. Lewis* (2009) 46 Cal.4th 1255, 1287.) The evidence was presented quickly, was not inflammatory when compared to the charged crimes, and we presume the jury followed the court's instruction on the proper purpose of the evidence. (*Jones, supra*, at p. 371.) We conclude the trial court did not abuse its discretion in admitting the evidence.

2.    *Defendant's Statements Regarding Prior Burglaries*

Defendant argues the court erred in allowing his former probation officer to testify to statements he made seven years earlier with respect to the earlier burglaries.

The prosecution moved in limine to introduce the statements, which defendant made during a 2015 pre-sentencing interview with the probation officer. The motion explained defendant told the probation officer that after his wife passed away, " 'everything went downhill,' " he stopped working, and money started running out, so

10

he started committing burglaries. The prosecution argued these statements were admissible under Evidence Code section 1101, subdivision (b) to prove intent. The court ruled the testimony was admissible. At trial, the officer testified that, seven years earlier, defendant said "after his wife passed away, things went downhill. He stopped working, started committing burglaries, and didn't give a shit." Further, "[h]e said the money was running out."

On appeal, defendant argues, without citation to authority, that this testimony should not have been admitted because it was irrelevant and prejudicial. Defendant has failed to demonstrate the evidence was irrelevant. Defendant asserts the information was more than seven years old, did not account for defendant's present situation, and "allowed for additional evidence to be introduced of Mr. Johnson's prior burglaries." Again, the prior crimes evidence was probative of intent and whether it was reasonable to infer from the circumstances that defendant intended to commit theft inside the house when he was caught breaking into it or whether defendant was merely trespassing. (See *People v. Jones, supra*, 51 Cal.4th at p. 371 ["Evidence that defendant intended to rob the Vernon victims tended to show that he intended to rob when he participated in the Florville crimes"].) The fact seven years had passed and it was possible his financial situation had improved went to the weight of the evidence, but did not make it irrelevant. To the extent defendant's reference to "prejudicial" was meant to invoke Evidence Code section 352, "the test for prejudice under Evidence Code section 352 is not whether the evidence in question undermines the defense or helps demonstrate guilt, but is whether the evidence inflames the jurors' emotions, motivating them to use the information, not to evaluate logically the point upon which it is relevant, but to reward or punish the defense because of the jurors' emotional reaction." (*People v. Valdez* (2012) 55 Cal.4th 82, 145.) Defendant has not shown the evidence prejudiced him in this sense and has not demonstrated any error in the court's admission of this evidence.

11

*D.*     *Alleged Cumulative Error*

Defendant argues "reversal is required due to the individual errors" and also because of "the cumulative errors."  "There was, however, no error to cumulate." (*People v. Phillips* (2000) 22 Cal.4th 226, 244.)

## III.  DISPOSITION

The judgment is affirmed.


/S/

_____

RENNER, J.


We concur:


/S/

_____

EARL, P. J.


/S/

_____

KRAUSE, J.